IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:22cr32-01

VELDREKA L. CROCKETT

### MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE AND MEMORANDUM IN SUPPORT (ECF No. 165), the UNITED STATES' RESPONSE OPPOSING DEFENSE MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE (ECF No. 168), and the DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE (ECF No. 169). Having reviewed those memoranda and taken evidence at a hearing on December 6, 2023, and considered the arguments of counsel, the Court finds that the defendant, Veldreka L. Crockett, has shown a fair and just reason for requesting the withdrawal and, therefore, the DEFENDANT'S MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE AND MEMORANDUM IN SUPPORT (ECF No. 165) will be granted.

### BACKGROUND

On April 5, 2023, a grand jury returned a five-count INDICTMENT (ECF No. 4) charging Veldreka L. Crockett ("Crockett")

with Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349, two counts of Mail Fraud, in violation of 18 U.S.C. § 1341, and two counts of Aggravated Identity Theft, in violation of 18 U.S.C. §1028A.[1]

As to Count Four, the INDICTMENT alleged that, from in or around June 2020 through in or around September 2020, Crockett and her codefendants devised and ran a scheme by which incarcerated individuals fraudulently obtained COVID-related unemployment insurance ("UI") benefits. ECF No. 4 at ¶ 18-19. Crockett obtained personal identifying information ("PII") of various incarcerated persons and used that PII to file fraudulent unemployment claims on their behalf. Id. at ¶ 20(a). Incarcerated individuals are not eligible to receive unemployment benefits.

In Count Four, Crockett was alleged to have "knowingly transfer[red], possess[ed], and use[d], without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: mail fraud . . . ," i.e., Aggravated Identity Theft--Count Four of the indictment. Id. at ¶ 28. Crockett allegedly used J.L.'s and C.A.'s social security number, name, and date of birth in the

---

[1] Crockett was charged along with two codefendants. For the purposes of this motion, they are irrelevant, so they are excluded from this analysis.

2

commission of the mail fraud. Id.

Crockett was arrested on April 27, 2022. ECF No. 8. She had an initial appearance before United States Magistrate Judge Hanes the same day. ECF No. 9. On July 21, 2022, Crockett entered a guilty plea to Counts One (Conspiracy to Commit Mail Fraud) and Four (Aggravated Identity Theft) of the Indictment. ECF No. 57. She proposes to withdraw only the plea of guilty to Count Four.

## DISCUSSION

Fed. R. Crim. P. 11(d)(2)(B) provides that "a defendant may withdraw a plea of guilty . . . after the Court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." The application of Rule 11(d)(2)(B) is guided by the multifactor test set forth in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).[2]

In Moore, the Fourth Circuit set forth a nonexclusive list of factors to be considered by district courts in applying the rule. The Moore factors are:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3)

---

[2] A more recent discussion of the Moore factors is in United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009), which both parties cite as well as Moore.

3

> whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

Moore, 931 F.2d at 248. Because the Moore factors are nonexclusive, a district court is instructed to balance the factors with any other pertinent considerations to reach the decision whether the defendant has shown a fair and just reason for withdrawing a guilty plea. United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009).

1.  **Whether the Defendant Has Offered Credible Evidence that His Plea Was Not Knowing or Not Voluntary**

A properly conducted Rule 11 plea colloquy is an important component in assessing the first factor of the Moore test. And, in this case, the colloquy was as required by law. Indeed, Crockett does not assert to the contrary. However, this case presents the first factor of the Moore test in a rather unusual context. Counsel who advised Crockett to enter a plea of guilty to Count Four testified at the evidentiary hearing that Crocket adamantly attested to her innocence at all times and that she did not want to enter a plea of guilty to that count. However, counsel informed Crockett that the law in the Fourth Circuit would certainly result

4

in a finding of guilty on Count Four were the case taken to trial. According to Austin's testimony, this topic and Crockett's assertions of innocence as to Count Four were the subject of many meetings between Crockett and her counsel, and only after being informed that a finding of guilt was almost a certainty did Crockett agree to plead guilty to County Four.

The circumstance leading up to Crockett's plea is thus closely related to Moore Factor 2 (credible assertion of legal innocence). On that point, Crockett says that she, of necessity, is not guilty by virtue of the decision in Dubin v. United States, 143 S. Ct. 1557 (2023). At the time of Crockett's plea, the Supreme Court of the United States had under consideration a petition for writ of certiorari to the United States Court of Appeals for the Fifth Circuit in the Dubin case but had not decided whether to grant that petition. Counsel for Crockett was unaware of the Fifth Circuit's decision in Dubin or of the pendency in the Supreme Court of a petition for certiorari seeking review. But, according to Austin, the predicate for Crockett's belief that she was innocent was essentially the same as the reason why the Supreme Court, in Dubin, found the statute to be an improper basis for Dubin's conviction.[3]

---

[3] Crockett is not contending that counsel was incompetent or ineffective because counsel was unaware of the pendency of Dubin

5

An analysis of the record considering Crockett's assertion of innocence, the Rule 11 colloquy that was conducted, and the evidence that Crockett pled guilty to Count Four only after counsel advised her that she would certainly be convicted, her insistence on innocence notwithstanding, provides a rather unusual circumstance in the assessment of Moore Factor 1.

Taken as a whole, the record here establishes that the Rule 11 colloquy was certainly adequate for the plea agreement to which the colloquy was addressed. However, the record here also establishes that, in fact, Crockett's plea was an Alford plea: North Carolina v. Alford, 400 U.S. 25 (1970). The colloquies for a standard plea and an Alford plea are materially different. United States v. Mastrapa, 509 F.3d 652, 659-60 (4th Cir. 2007).

Here, this colloquy did not satisfy the requisites of an Alford plea colloquy because the Magistrate Judge was not informed of Crockett's insistence on her innocence. Accordingly, the presumptive strength attached to a properly conducted colloquy cannot be ascribed to Crockett's plea of guilty to Count Four.

Moreover, on this record and the absence of a colloquy keyed to what Crockett actually was doing necessitates the conclusion

---

in the Supreme Court of the United States. And, indeed, the law in our Circuit forecloses any finding to that effect. United States v. McNamara, 74 F.3d 514 (4th Cir. 1996).

that Moore Factor 1 cuts in favor of a conclusion that there is a fair and reasonable basis for allowing Crockett to withdraw her plea of guilty to Count Four.

2.  **Whether the Defendant Has Credibly Asserted His Legal Innocence**

Crockett's claim of legal innocence is founded on the decision in Dubin v. United States. The simple fact is that Dubin effected a sea change in the application of 18 U.S.C. § 1028A(a)(1).

For example, at the outset of the opinion, the Supreme Court made clear that "the text and context of the statute do not support . . . the boundless interpretation [urged by the Government]." Dubin v. United States, 143 S. Ct. 1563. Later the Supreme Court described the Government's theory as to the breadth of § 1028A to be one that would "apply automatically any time a name or other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses. In other words, virtually all the time." Id. at 1564-65. And so, the Court concluded that, "[i]n deciding between the parties' readings, one limited and one nearly limitless, precedent and prudence require a careful examination of § 1028A(a)(1)'s text and structure." Id. at 1564-65.

In making that examination, the Court, in Dubin, found it appropriate to remind that the statute is addressed to a specific

7

topic: to-wit, <u>identity theft</u>. The Court then explained that the term "identity theft" had "a focused meaning." <u>Id.</u> at 1568.

> One dictionary defines <u>identity theft</u> as 'the <u>fraudulent appropriation and use</u> of another person's identifying data or documents, as a credit card.' (citation omitted) Another similarly offers '[t]he <u>unlawful taking and use</u> of another person's identifying information for fraudulent purposes; specif[ically] a crime in which <u>someone steals personal information</u> about and belonging to another, such as a bank account number or driver's-license number, <u>and uses the information to deceive others.</u>' (citation omitted)

<u>Id.</u> at 1568 (emphasis added).

Having defined "use" and "in relation to," the Court concluded that the statutory definitions "refer to offenses built around what the defendant's does with the means of identification in particular. In other words, the means of identification is a key mover in the criminality." <u>Id.</u>

The Supreme Court then turned to the section of the statute, under which Crockett is indicted in Count Four, where it is alleged that Crockett "transfer[red], possess[ed], and use[d], without lawful authority a means for identification of another person during and in relation to a felony violation . . . to-wit mail fraud." As to that section of the statute, the Supreme Court explained that the word "use" travelled in the company of the words "transfer" and "possess," and, that under the familiar canon of

8

interpretation noscitur a sociis, 'a word is known by the company it keeps.'" Id. at 1569 (citations omitted). With that in mind, the Court explained that "[t]he two neighboring verbs here, 'transfer' and 'possess,' are most naturally read in the context of § 1028A(a)(1) to connote theft." Id. (emphasis added). And, indeed, those words connote the theft of "means of identification belonging to another person." Id. Therefore, the statutory term clearly means identity theft which according to "ordinary understandings of identity theft: 'a crime in which someone [1] steals [2] personal information about and [3] belonging to another.'" Id. at 1570 (citation omitted). Crockett has offered evidence that she did not commit an act of theft, i.e., that she stole no personal information from anyone.

Continuing with the textual and structural analyses, with the definition of identity theft in mind, the Supreme Court also concluded that "Congress thus employed a trio of verbs that capture various aspects of 'classic identity theft.'" Id. at 1570 (citation omitted) Based upon the foregoing analysis and the rejection of the breathtaking sweep urged upon it by the Government, the Court came to the conclusion that:

> A defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal. To be clear, being at the crux of the criminality requires more

9

> than a casual relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'

Id. at 1573 (emphasis added). Put another way, the Court explained that "[s]uch fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved." Id. at 1573.

Then, applying the principles to Dubin's case specifically, the Court held that "[t]he crux of the healthcare fraud was a misrepresentation about the qualifications of petitioner's employee. The patient's name was an ancillary feature of the billing method employed." Id. at 1574. Accordingly, the Court concluded that Dubin's "fraud was in misrepresenting how and when services were provided to a patient, not who received the services." Id. And, because that meant that Dubin did not use the patient's means of identification in relation to a predicate offense within the meaning of § 1028A(a)(1), his conviction must be vacated. That scenario is what Crockett says happened in her case and there is evidence from which a jury reasonably could reach that conclusion.

So, on both scores (theft and use), Crockett has credibly asserted her legal innocence. In addition, it must be noted that Justice Gorsuch took the view that § 1028A(a)(1) was subject to two or more different interpretations and thus likely was void for vagueness. That too would, if established, stand as a credible

assertion of legal innocence.

3.  **Whether There Has Been a Delay Between the Entering of the Plea and the Filing of the Motion**

    Neither party is concerned about the delay that occurred after the entry of the plea and before sentencing. The Court agrees.

4.  **Whether Defendant Has Had Close Assistance of Competent Counsel**

    In the original papers, Crockett suggested that counsel may not have acted competently because counsel was not aware of the Dubin decision. But at argument, Crockett's newly-appointed counsel advised that the thrust of the argument respecting the performance of counsel had to do with the first factor, rather than with competence of counsel, and counsel's competence was not under attack. Under the law of the Circuit, i.e., McNamara, that clearly is a correct assessment.

5.  **Whether Withdrawal Will Cause Prejudice to the Government**

    The Government advises that there is no prejudice.

6.  **Whether the Withdrawal Will Inconvenience the Court and Waste Judicial Resources**

    The Government contends that Moore Factor 6 is in play here. The Court does not share that view. Time spent disposing of an effort to withdraw a guilty plea pales in significance in comparison to the importance of assuring that, under our legal

11

system, a person who has a viable claim of legal innocence can present it. That principle disposes of any possible inconvenience and waste of judicial resources present here.

### 7. The Balance of Factors

As discussed above, the non-exclusive Moore factors must be balanced. That balance must be conducted mindful of the purpose of Rule 11 which is to permit one who offers a fair and just reason for withdrawing a plea to do so.

Taken as a whole, balancing all the factors, the Court concludes that Crockett has met the burden required by Rule 11(d)(2)(B), that she has shown a fair and just reason for withdrawing her guilty plea to Count Four, and that the motion should be granted.

In opposing Crockett's motion, the United States urges the Court to reach the merits of how Dubin applies to this case and to reject the vagueness doctrine out of hand. In support of its position, it cites a number of cases which, when the issue is properly presented, can be considered, and might even result in a decision in favor of the Government on the merits. However, this matter is not now at the stage of the proceedings when the Government's arguments are appropriately considered. The reach and extent of Dubin will be presented when Crockett moves to dismiss

12

the Indictment or when a motion is made following the presentation of the evidence under Fed. R. Crim. P. 29. Likewise, the vagueness argument must be presented in a motion to dismiss the Indictment and the Court will consider it after a full briefing on the issue.

And, the Government, like the Dubin majority, might be correct that Justice Gorsuch's view is without merit. But that view cannot, as the Government urges, be written off out of hand. Indeed, it is no surprise in this case that Justice Gorsuch concluded that the statute smacked of vagueness. Indeed, the majority opinion describes the Government's reading of the statute as one of "staggering breath." Id. at 1572. And, in making its analysis, the majority opinion commented that "[t]ime and again, this Court has prudently avoided reading incongruous breath into opaque language in criminal statutes." Id. at 1572.

The Court went on to explain in detail where that had been done and then commented:

> So too here. The Government's reading would sweep in the hour-inflating lawyer, the steak-switching waiter, the building contractor who tacks an extra $10 onto the price of the paint he purchased. So long as they used various common billing methods, they would be subject to a mandatory two years in federal prison. To say that such a result is implausible would be an understatement.

Id. at 1572-73. Although the majority did not think much of Justice Gorsuch's comments on vagueness, id. at 1573 n.10, the majority's

13

own analysis certainly bespeaks the view that the statute is both broad and opaque. Those are fundamental aspects of a vagueness analysis. And so, notwithstanding the majority's rejection of Justice Gorsuch's comments, Crockett can present it for consideration and full briefing.

## CONCLUSION

For the reasons set forth above, DEFENDANT'S MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE AND MEMORANDUM IN SUPPORT (ECF No. 165) will be granted.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 13, 2023

14