IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Criminal No. 3:22cr32-01

VELDREKA L. CROCKETT

## MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE AND MEMORANDUM IN SUPPORT (ECF No. 165), the UNITED STATES' RESPONSE OPPOSING DEFENSE MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE (ECF No. 168), and the DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE (ECF No. 169). Having reviewed those memoranda and taken evidence at a hearing on December 6, 2023, and considered the arguments of counsel, the Court finds that the defendant, Veldreka L. Crockett, has shown a fair and just reason for requesting the withdrawal and, therefore, the DEFENDANT'S MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE AND MEMORANDUM IN SUPPORT (ECF No. 165) will be granted.

## BACKGROUND

On April 5, 2023, a grand jury returned a five-count INDICTMENT (ECF No. 4) charging Veldreka L. Crockett ("Crockett")

with Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349, two counts of Mail Fraud, in violation of 18 U.S.C. § 1341, and two counts of Aggravated Identity Theft, in violation of 18 U.S.C. §1028A.[1]

As to Count Four, the INDICTMENT alleged that, from in or around June 2020 through in or around September 2020, Crockett and her codefendants devised and ran a scheme by which prison inmates fraudulently obtained COVID-related unemployment insurance ("UI") benefits. ECF No. 4 at ¶ 18-19. With the aid and knowledge of those inmates, Crockett used their personal identifying information ("PII") to file fraudulent unemployment claims on their behalf. Id. at ¶ 20(a). Prison inmates are not eligible to receive unemployment benefits. Crockett received a fee for processing the applications.

In Count Four, Crockett was alleged to have "knowingly transfer[red], possess[ed], and use[d], without lawful authority, a means of identification of another person [the prison inmates], during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: mail fraud . . . ," i.e., Aggravated Identity Theft--Count Four of the INDICTMENT. Id. at ¶ 28. The

---

[1] Crockett was charged along with two codefendants. For the purposes of this motion, they are irrelevant, so they are excluded from this analysis.

2

Indictment identified "J.L." and "C.A." as the individuals whose PII Crockett allegedly used. Id. In particular, Crockett allegedly used J.L.'s and C.A.'s social security number, name, and date of birth in the commission of the mail fraud. Id.

Crockett was arrested on April 27, 2022. ECF No. 8. She had an initial appearance before United States Magistrate Judge Hanes the same day. ECF No. 9. On July 21, 2022, Crockett entered a guilty plea to Counts One (Conspiracy to Commit Mail Fraud) and Four (Aggravated Identity Theft) of the INDICTMENT. ECF No. 57. She proposes to withdraw only the plea of guilty to Count Four.

## DISCUSSION

Fed. R. Crim. P. 11(d)(2)(B) provides that "a defendant may withdraw a plea of guilty . . . after the Court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." The application of Rule 11(d)(2)(B) is guided by the multifactor test set forth in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).[2]

In Moore, the Fourth Circuit set forth a nonexclusive list of factors to be considered by district courts in applying the rule.

---

[2] A more recent discussion of the Moore factors is in United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009), which both parties cite as well as Moore.

The Moore factors are:

> (1) whether the defendant has offered credible evidence that [her] plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted [her] legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

Moore, 931 F.2d at 248. Because the Moore factors are nonexclusive, a district court is instructed to balance the factors with any other pertinent considerations to reach the decision whether the defendant has shown a fair and just reason for withdrawing a guilty plea. United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009).

1. **Whether the Defendant Has Offered Credible Evidence that Her Plea Was Not Knowing or Not Voluntary**

A properly conducted Rule 11 plea colloquy is an important component in assessing the first factor of the Moore test, and, more often than not, the colloquy provides sufficient proof that a plea was made knowingly and voluntarily. Neither party questions the adequacy of the Rule 11 colloquy. That, however, is not the end of the inquiry into Moore Factor 1 under the record in this case.

4

First, at the evidentiary hearing on Crockett's motion, her counsel testified that, at all times, Crockett maintained her innocence of the charge in Count Four, in part, because she did not steal the identities she admittedly used. Counsel also testified that Crockett did not want to plead guilty to Count Four but did so only because counsel informed Crockett that the law in the Fourth Circuit would certainly result in a finding of guilty on Count Four were the case taken to trial. According to counsel, that topic and Crockett's assertions of innocence as to Count Four were the subject of many meetings between Crockett and her counsel.

Of course, to obtain a lesser sentence, a defendant may maintain innocence and nonetheless enter a knowing and voluntary plea of guilty on the basis that the Government's evidence is sufficient to produce a conviction. North Carolina v. Alford, 400 U.S. 25 (1970). However, when an Alford plea is to be entered, the Court must be so informed; the plea agreement should reflect that the plea of guilty is an Alford plea; the Rule 11 colloquy must be conducted with the nature of the plea in mind; and the Court must find that there is, in fact, strong evidence of the defendant's guilty and that the defendant is knowingly and voluntarily pleading guilty to obtain a sentencing advantage even while maintaining his innocence. United States v. Alston, 611

F.3d 219, 227 (4th Cir. 2010); United States v. Toyer, 414 Fed. Appx. 584, 595-96 (4th Cir. 2011).

Here, Crockett was in reality entering an Alford plea from her standpoint, but the plea agreement did not say that, the Court was not informed that the defendant maintained her innocence but nonetheless was pleading guilty to secure a sentencing advantage, and neither counsel confronted Crockett's reality. As a result, the plea colloquy did not make the inquiries necessary to permit a supportable finding that the plea of guilty was knowingly and voluntarily made. Nor was the Court able to make the findings necessary to acceptance of an Alford plea.

Thus, under the facts in this case, Moore Factor 1 favors withdrawal of the plea.

2. **Whether the Defendant Has Credibly Asserted Her Legal Innocence**

Crockett's claim of legal innocence is founded on the decision in Dubin v. United States which effected a sea change in the application of 18 U.S.C. § 1028A(a)(1). For example, at the outset of the opinion, the Supreme Court made clear that "the text and context of the statute do not support . . . the boundless interpretation [urged by the Government]." Dubin v. United States, 143 S. Ct. 1563. The Supreme Court later described the Government's theory as to the breadth of § 1028A to be one that

6

would "apply automatically any time a name or other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses. In other words, virtually all the time." Id. at 1564-65. Accordingly, the Court instructed that, "[i]n deciding between the parties' readings, one limited and one nearly limitless, precedent and prudence require a careful examination of § 1028A(a)(1)'s text and structure." Id. at 1564-65.

Then, the Court found it appropriate to point out, the § 1028A(a)(1) statute is addressed to a specific topic: to-wit, identity theft, a topic which significantly "has a focused meaning." Id. at 1568. The Court continued to explain that meaning:

> One dictionary defines identity theft as 'the fraudulent appropriation and use of another person's identifying data or documents, as a credit card.' (citation omitted) Another similarly offers '[t]he unlawful taking and use of another person's identifying information for fraudulent purposes; specif[ically] a crime in which someone steals personal information about and belonging to another, such as a bank account number or driver's-license number, and uses the information to deceive others.' (citation omitted)

Id. at 1568 (emphasis added).

The Supreme Court then turned to the section of the statute under which Crockett is indicted in Count Four where it is alleged

7

that Crockett "transfer[red], possess[ed], and use[d], without lawful authority a means for identification of another person during and in relation to a felony violation . . . to-wit mail fraud." As to that section of the statute, the Supreme Court explained that the word "use" travelled in the company of the words "transfer" and "possess," and, that under the familiar canon of interpretation *noscitur a sociis*, 'a word is known by the company it keeps.'" Id. at 1569 (citations omitted). With that in mind, the Supreme Court held that "[t]he two neighboring verbs here, 'transfer' and 'possess,' are most naturally read in the context of § 1028A(a)(1) to connote theft [of the personal identifying information]." Id. And, because those words connote the theft of "means of identification belonging to another person," the statutory term clearly means identity theft which according to "ordinary understandings of the term is: 'a crime in which someone [1] steals [2] personal information about and [3] belonging to another.'" Id. at 1570 (citation omitted). That analysis led the Supreme Court to conclude that "Congress thus employed a trio of verbs that capture various aspects of 'classic identity theft.'" Id. at 1570 (citation omitted) Crockett's claims of innocence is that she did not commit "identity theft." And, the text of Dubin

makes her view of things a credible defense under the facts of the case.³

Moreover, it must be noted that Justice Gorsuch took the view that § 1028A(a)(1) was subject to two or more different interpretations and thus likely was void for vagueness. That too would, if established, stand as a credible assertion of legal innocence.

On this record, Moore Factor 2 weighs in favor of withdrawal.

3. **Whether There Has Been A Delay Between The Entering Of The Plea And The Filing Of The Motion**

Neither party is concerned about the delay that occurred after the entry of the plea and before sentencing. The Court agrees.

4. **Whether Defendant Has Had Close Assistance of Competent Counsel**

In the original papers, Crockett suggested that counsel may not have acted competently because counsel was not aware of the Fifth Circuit's Dubin decision or the fact that there was a pending petition for a writ of certiorari to that decision. At argument, Crockett's counsel advised that: (1) the thrust of the argument respecting the performance of counsel had to do with Moore Factor

---

³ Of course, that the defense is credible does not mean that it will be successful. That, however, is not the issue at this stage of the case.

9

1 rather than with this factor; and (2) counsel's competence was not under attack. Under the law of the Circuit, that clearly is a correct assessment. <u>United States v. McNamara</u>, 74 F.3d 514 (4th Cir. 1996).

5. **Whether Withdrawal Will Cause Prejudice To The Government**

The Government advises that there is no prejudice.

6. **Whether The Withdrawal Will Inconvenience The Court And Waste Judicial Resources**

The Government contends that this factor counsels against withdrawal here. The Court does not take that view. The expenditure of time and resources spent addressing an effort to withdraw a guilty plea pales in significance with respect to the importance of assuring that, under our legal system, a person who has a viable claim of legal innocence can present it. That principle disposes of any possible inconvenience and waste of judicial resources present here.

7. **The Balance Of Factors**

As discussed above, the non-exclusive <u>Moore</u> factors must be balanced. That balance must be conducted mindful of the purpose of Rule 11 which is to permit one who offers a fair and just reason for withdrawing a plea to do so. Taken as a whole, balancing all the factors, the Court concludes that Crockett has met the burden

required by Rule 11(d)(2)(B); that she has shown a fair and just reason for withdrawing her guilty plea to Count Four; and that the motion should be granted.

In opposing Crockett's motion, the Government urges the Court to reach the merits of how, if at all, <u>Dubin</u> applies to this case and to reject the vagueness doctrine argument out of hand. In support of its position, the Government cites a number of cases which, when the issue is properly presented, might result in a decision in favor of the Government. However, this case is not now at the stage of the proceedings when the Government's substantive arguments are to be resolved. The reach and extent of <u>Dubin</u> will be presented if, and when, Crockett moves to dismiss the Indictment or, if, and when, a motion is made following the presentation of the evidence under Fed. R. Crim. P. 29. At this point, the question is whether Crockett has made a credible assertion of innocence under the statute as interpreted by <u>Dubin</u>. She has met that burden. That her assertion might not succeed upon a full consideration of the reach of <u>Dubin</u> does not foreclose the resolution of the <u>Moore</u> Factors in Crockett's favor.

Likewise, the vagueness argument must be presented, if at all, in a motion to dismiss the Indictment and the Court will consider it after a full briefing on the issue. However, it is no surprise that Justice Gorsuch concluded that the statute smacked

of vagueness for, indeed, the majority opinion describes the Government's reading of the statute as one of "staggering breadth." Id. at 1572. And, in making its analysis, the majority opinion commented that "[t]ime and again, this Court has prudently avoided reading incongruous breath into opaque language in criminal statutes." Id. at 1572.

The Court went on to explain in detail where that had been done and then commented:

> So too here. The Government's reading would sweep in the hour-inflating lawyer, the steak-switching waiter, the building contractor who tacks an extra $10 onto the price of the paint he purchased. So long as they used various common billing methods, they would be subject to a mandatory two years in federal prison. To say that such a result is implausible would be an understatement.

Although the Dubin majority did not think much of Justice Gorsuch's comments on vagueness, the majority's observations certainly bespeak the view that the statute is both broad and opaque. And, of course, those are fundamental aspects of a vagueness analysis. And so, notwithstanding the majority's negative view of Justice Gorsuch's comments, i.d. at 1573 at n. 10, Crockett's assertion of vagueness cannot, as the Government would have it, be rejected out of hand.

## CONCLUSION

For the reasons set forth above, DEFENDANT'S MOTION TO WITHDRAW PLEA TO COUNT FOUR DUE TO LEGAL INNOCENCE AND MEMORANDUM IN SUPPORT (ECF No. 165) will be granted.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 8, 2024

13